## GEORGE HOUSTON *vs.* ENOCH SPRUANCE.

Covenants, mutual and independent; conditional; concurrent; construction of.

Where mutual covenants go to the whole consideration they are conditions.

Where a day is appointed for the payment of money for a thing to be done, if such day is fixed beyond the time the act is to be done, it is a condition precedent, and the obligation of payment conditional.

H., having procured a contract with government to carry the mail on a certain post route for four years and six months from the 1st of January, 1840, sold the said contract to S. for the use of the People's line of stages Company, for the sum of $1,600, payable " in cash on or before the 1st of January next; the said contract to be assigned by said H., with the consent of the postmaster general to J. R., or any other person said company may name for their use :" Held, that the plaintiff could not recover the $1,600 without showing an assignment of the contract before the 1st of January, or that he did what was incumbent on him to procure the assent of the postmaster general, and tendered himself ready to make the assignment.

NEW CASTLE, May term, 1844. This was an action of covenant on the following sealed instrument, dated 27th September, 1839:—

" George Houston, of the town of New Castle, Del., contractor on mail route 1801, from Wilmington, Del., to Georgetown, has sold his interest in said contract to Enoch Spruance, of Smyrna, Del., and Elihu Jefferson, of New Castle, for the use and benefit of the People's line of stages company, now in operation on said route; the new service to commence on the 1st of January next; for which the said Spruance and Jefferson promises and agrees to pay the said Houston $1,600 in cash, on or before the 1st of January next: said contract to be assigned by said Houston with the consent of the postmaster general to Jacob Raymond, or any other person said company may name for their use."

The People's line of stages company, for whose use this mail contract was purchased by Spruance and Jefferson, was a joint stock company, without incorporation. Spruance was the general agent and treasurer, and resided in Smyrna; Jefferson was the agent at New Castle, and Jesse Sharp at Wilmington. This company was a competitor with Houston at the mail lettings in 1839, both being applicants for this route. Jefferson was a member of the company, and present when they determined the amount of their bid; *he was also the voucher for Houston's bid,* which was lower than the offer of the company, and of course obtained the contract, which Spruance and Jefferson subsequently bought of him for the use of the company. Sharp and others who were large shareholders in the People's line were opposed to this purchase, alledging that the contract had been

improperly obtained by Houston through Jefferson's collusion; and they determined to avoid the execution of it, if possible, of which Sharp gave notice to Houston, in the month of December, 1839. Spruance on the contrary was determined that his contract with Houston should be carried out in good faith, of which Jefferson often assured Houston, and also told Houston he had no doubt Spruance would carry it out whether the assignment was made before the 1st of January or not; though he did not waive the assignment. *The assignment was never in fact made.* On the 1st of Jan. 1840, Sharp, at Wilmington, threw the mails out upon the street, and refused to let them be taken in the People's line of stages. Houston got up another line and took them himself. When he called on Spruance at Smyrna, Spruance expressed his regret at Sharp's interference, and then offered to carry out the contract, saying he would take the mails in spite of Sharp's opposition; but Houston said it might result in putting him to the trouble of carrying them whenever Sharp interfered; and, declining Spruance's offer, went on to complete his arrangements for a new line.

This suit was brought for a breach of the agreement. The process was issued, into Kent, against Spruance and Jefferson, and was returned, non est inventus as to Jefferson, though he still lived in New Castle. The suit, therefore, was prosecuted against Spruance *alone.* *This was another circumstance relied on as showing a collusion* between Houston and Jefferson.

The plaintiff gave in evidence, the contract declared on, and also the mail contract to which it refers, viz.—for the transportation of the mails on mail route 1801, from the 1st of January, 1840, for four years and six months, at $612 50, per quarter. He also put in evidence, a letter from the postmaster general to Mr. Houston, dated January 7, 1840, in reference to an assignment of this contract *to Jesse Sharp*, in which the postmaster general stated that no action could be had on it without the assent of the transferee in writing ; referring to the general post office regulations, which were produced in evidence.

A witness was asked if he did not hear Jefferson refuse to allow Spruance to use his name in a suit against Houston for a refusal to assign the contract, in order to show collusion between Houston and Jefferson, and weaken the force of Jefferson's admissions proved on the other side. This was objected to and ruled out, as the declarations of a party co-obligor with defendant made after breach of contract and after suit brought, and offered in evidence for his co-obligor.

The defendant gave in evidence the precipe and writ to the sheriff of Kent county, for Jefferson and Spruance, returned non est inventus as to Jefferson, cepi corpus as to Spruance; also, the contract of Houston with the post-office department; bond of Houston *with Jefferson as his surety,* dated 7th of Nov. 1839, and a letter from Mr. Hobbie, postmaster general, to Jacob Raymond, dated 19th of Dec. 1842, informing him that Houston had never applied to the department to assign this contract to him.

Mr. Raymond proved that the contract was never assigned, nor was there any offer by Houston to assign it to him. The company never directed the assignment to any other person. He had made no application to the post office department for its sanction to an assignment, nor sent on any bond, or offered any surety. He had not refused the assignment, nor done any thing to prevent it.

Alexander Porter proved that Houston had declared he had concluded not to sell the mail contract to the People's line, but should run the line himself. This evidence was admitted under the plea of non infregit conventionem.

*Court.*—The plaintiff has declared on this contract as containing mutual covenants to pay on assigning, or being ready and willing to assign the contract. He avers that he was ready and willing to assign. His declarations that he did not mean to sell to any other, but to run the line himself, *tend* to disprove this allegation.

Jesse Sharp proved notice to Houston that Raymond had been appointed by the company to receive a transfer of the mail contract, and that unless the necessary steps were taken to transfer it, with the assent of the postmaster general, before the 1st of January, the company would not take it.

A printed pamphlet was offered in evidence to show what was the route No. 1801, according to the proposals of government. The pamphlet was sent by the general post office department to the post office in New Castle, and was proved by the deputy postmaster there to have been received at the time the proposals were issued, and that this was the invariable custom of the department. The document was objected to as not being sufficiently proved; and admitted by the court, on the principle that acts of the government may be proved in the usual form of their announcement. The gazette is evidence of public acts; congressional copies of messages, &c. (1 *Phil. Ev.* 305.)

The declaration contained six counts : 1st. Averring the readiness of plaintiff to transfer the contract, assigned as a breach the

non-payment of the $1,600. 2d. That the contract was assignable; that plaintiff was ready to assign it, but the company failed to name a person to whom it should be transferred. 3d. That plaintiff was prevented by the company from assigning, and the failure to nominate a person as assignee. 4th. Averring as in second count, and alledging that plaintiff was prevented from assigning the contract by the acts and neglect of defendants. The 5th count set forth the contract in words; averred the readiness of plaintiff to perform, &c., and assigned the breach of non-payment of the $1,600. The 6th contained a general breach.

The pleas were *non est factum*; *non infregit conventionem*; per fraudem; payment; discount; set off, and non performance of a condition precedent.

*W. H. Rogers*, for plaintiff.—There is no proof under the plea of fraud that will vitiate the contract. The fact that Jefferson backed Houston's bid and became his surety for the performance of his contract with the post office department, is no evidence of collusion to defraud the People's line, much less of fraud in relation to this contract, which was a subsequent matter. Even if Jefferson did give Houston information of the company's bid it would not avoid the contract. (*U. S. Laws, 28th section of act of* 1836.)

What is the legal construction of this agreement? 1st. Is the assignment a condition precedent? 2d. Are the covenants mutual and concurrent? 3d. Are the covenants independent and distinct? I shall claim that the last is their true character. The agreement for the sale of a mail contract on mail route 1801, between Wilmington and Georgetown, is fully proved by the production of a contract on that route, though it does contain a collateral route from Milford to Lewestown. The advertisement for proposals specify the branch route, and the whole was known as the mail route, No. 1801, to which Wilmington and Georgetown are the termini.

"George Houston *has sold* his contract; *for which* Spruance and Jefferson promise to pay $1,600, on or before the 1st of January next; said contract to be assigned by Houston, with consent of the postmaster general, to Jacob Raymond, or any other person said company may name." I admit that since the case of Kingston *vs*. Preston, the courts look more to the intention of the parties than the words, and incline against holding covenants independent. Houston *has sold*, past; for which *sale* Spruance and Jefferson were to pay $1,600 by a certain day, or *sooner*. There is then a mere description of the person to whom the assignment was to be made, without

any specification as to time; and there is no case in which such an act can be so linked with the contract as to make a condition precedent. Covenants—precedent, concurrent, independent; what? (3 *Law Lib.* 46, [*Platt on Covts.* 105; *Ib.* 22; 1 *Leigh N. P.* 679, 682, 687; 6 *T. Rep.* 570, *Campbell vs. Jones;* 23 *Law Lib.* 7, 8; 2 *Steph. N. P.* 1071-2; 1 *Chitty Plead.* 353-4-5; 1 *Saund. Pl. & Ev.* 451-7; 8 *Term Rep.* 160, 278, 287.)

I consider that all the cases in which the covenant goes only to a part of the consideration apply to the present case. The agreement to pay $1,600 was for the *sale* of the contract, from which defendant derived a benefit; the matter of assignment was a subsequent duty, and might fall beyond the day fixed for payment. There are no words of connection between the covenant to pay, and the covenant to assign. We can recover on any construction of this agreement.

1. If it be a condition precedent, it being proved that we have taken all proper steps to make the assignment, which was rendered impossible by the neglect of the defendant to name a person; or was excused by their waiver of it. (1 *T. Rep.* 642, *Hotham vs. E. I. Co.*)

2d. If a concurrent covenant, all we have to show is, that we were ready and willing to assign. (2 *Doug.* 684, *Jones vs. Barkley.*) If I can show that defendant said he would not take the assignment; or said that it made no difference; or neglected to apply to the post office department, if such was his duty, or had received any benefit from the purchase without the assignment, either of these will excuse the performance. (*Ch. Plead.* 355; 5 *Wend. Rep.* 496; 6 *T. R.* 570; 15 *C. L. Rep.* 22.)

The covenant to pay was a personal covenant of defendants. No act was to be done by Houston in reference to them before payment was due; the assignment to the company if not made, is a matter which they only can object to. The defendant's liability is not through the company, but personal. Is there any proof that the parties ever designed that this assignment should be made *before* the 1st of January? Nothing but the solicitude of Houston to do it. The repeated assurances of E. Jefferson, that it would make no difference when done, proves the contrary. Whose duty was it to procure the assignment? Before it could be done the purchaser must offer surety to the post office department and obtain its sanction. The contract itself prohibits an assignment, without the assent of the postmaster general. The evidence proves that the written assent of Spruance and Jefferson must be filed in the department before it would hear any proposition to assign the contract.

The person to whom the assignment was to be made, was left in doubt by the agreement, and it was the duty of the defendants to notify Houston who was to be the assignee, and this in time to procure the assignment.

But they say Spruance offered to carry the mail on the evening of the 1st of January. This was too late. It was after a breach of the contract; and could not excuse him, even if his ability to perform his promise had been proved, which it has not.

*W. T. Read* and *J. M. Clayton*, for defendant.—Under the issue on the plea of non infregit conventionem the defendant is let into every defence that he could have under any other plea. Though this plea is not good where the covenant is in the negative, it can be objected to only on demurrer; and if the defendant take issue upon it, this opens every defence which shows that defendant did not break his covenant, or that plaintiff ought not to recover. (25 *Wend. Rep.* 373.) But there is another plea on which the defence is complete; that the contract with the post office department was never assigned to defendant, and that defendant never prevented it. Replication to this, " that the People's line refused to receive the assignment and thus prevented the assignment. The issue is on this replication; and, we have also pleaded the non-performance of a condition precedent.

1st. The assignment is to be made to Jacob Raymond unless the company should appoint some other person. Without any thing further Houston had notice by the agreement, that Raymond was the person to whom the contract was to be assigned. So far from appointing another person, the company appointed Raymond; and notified Houston of this, according to Sharp's testimony.

2d. Spruance as the guarantee of the People's line of stages company, acting for them without any personal interest, agreed to pay, or to warrant that the company should pay, $1,600, for this mail contract, which Houston was to assign and transfer to Raymond for the company. This is his single covenant. He undertook to do nothing but to pay the money for the contract. He could not get the contract legally without an assignment. Spruance was the treasurer: if the contract stood in Houston's name, he alone could legally receive the mail money; if it was assigned to Raymond for the company, the mail money would fall legally into Spruance's hands; and he run no risk of his guaranty, if he was to handle the money. This shows why Spruance required a stipulation for the transfer.

3d. He agreed to pay $1,600, *for the contract*, not for the sale; for the *whole* contract, which he could not get unless the assignment

was made before any part of the contract had elapsed. Neither could the contract service commence on the 1st of January unless the assignment was legally made *before* the 1st of January. The assignment was to *precede* the payment of the money; and this makes it a condition precedent. (*Fell on Guar.* 116.)

The refusal by Sharp to carry the mails *was not* a breach of the contract. Sharp one agent, without authority, refused to carry the mail one morning; Jefferson another agent, Spruance the general agent and treasurer, all offered to carry it, and declared that Sharp would and should comply. Houston refused to let them. The only consequence of Sharp's act would be, to make the company liable to compensate Houston for his refusal to carry the mails that day.

Were these covenants dependant or independent? The asssignment in this case was a condition precedent. (2 *Johns. Rep.* 145, *Barruso vs. Madan.*) Whether a covenant is a condition precedent, depends not upon technical words or their position in the contract, but on the meaning;—on the question which party is to do the first act. (2 *Johns. Rep.* 207, *Green* vs. *Reynolds.*)

Even if it should be held that this is a case of concurrent or dependent covenants, the plaintiff is bound to prove not only that he was *willing* to assign, but that he was ready and offered to assign : that he tendered an assignment. That is in this case, that he *tendered* an assignment to Jacob Raymond, and failed only on his refusal or the refusal of the post office department to accept Raymond as the assignee. (4 *Term Rep.* 761 ; 1 *Hen. Blac.* 270-8, *Duke of St. Albans* vs. *Shore.*)

Where mutual covenants go to the whole consideration on both sides, they are mutual conditions, the one precedent to the other. They here go to the whole consideration. To pay $1,600, *for all* Houston's interest in the contract; the money to be paid the 1st of January; service to commence the 1st of January, and contract to be assigned to Jacob Raymond. (*Willes Rep.* 157, *n. a;* 10 *Johns. Rep.* 203, 212-13; *Ibid* 266 ; 16 *Ib.* 267 ; 17 *Ib.* 293 ; 3 *Law Lib.* 35-6-7, *Platt on Covts* 75, 83.) Where a day certain is appointed for the payment of money, if it is to occur after the time in which the consideration ought to be performed for which the money is payable, the performance of the consideration is a condition precedent. Here the 1st of January was the day appointed for the payment of $1600 ; and the consideration for this was the transfer of *all* Houston's interest in this mail contract. He was bound then to make that assignment before the day of payment. And

Spruance, who is a mere guarantor, was not bound to pay without an assignment. (11 *Johns. Rep.* 525; 20 *Ibid* 20.)

No notice was necessary from the company to Houston that he must make the assignment. The agreement pointed out the person to whom the assignment was to be made, unless the company should appoint another, and Houston was bound to call on that person with a tender of the assignment. If the company had appointed another person, it would have been for them to notify Houston of such appointment. But they did not appoint another.

The contract between Houston and the post office department is a contract for a larger service than is covered by this agent, being for carrying the mails on route 1801, between Wilmington and Georgetown, *with a branch between Milford and Lewestown.* The contract agreed for, was a contract on route 1801 between Wilmington and Georgetown only. Houston, therefore, had no power to assign such a contract as he sold.

*Mr. Wales* replied.

Judge Layton, charged the jury.

LAYTON, *Justice:*—The foundation of this action is an agreement in writing, made on the 27th day of September, 1839, between George Houston, and Enoch Spruance and Elihu Jefferson.

Spruance is the only party to that agreement who has been called to defend this action. Observations have been submitted, by counsel, in relation to this fact, which the court thinks are in nowise connected with the issues in the cause. The plaintiff at his election, sued out process against both Spruance and Jefferson; and directed it to the sheriff of Kent county. Spruance was arrested and has appeared to the action. There was a return of "non est," as to Jefferson, and the plaintiff thought proper to proceed against Spruance alone without further proceeding to compel the appearance of Jefferson.

We may also, further remark, that the various allegations which have been thrown into this case, in relation to a supposed connexion between Houston and Jefferson, or to any frauds which are suspected to have existed between them, or between Houston and others, are all foreign to the issues joined in this cause, and have no legitimate connexion with it; unless fraud has been proved to have been practised by Houston, in procuring this agreement with Spruance and Jefferson.

In all this we see nothing which should excite prejudice against the plaintiff, or enlist sympathy for the defendant; if, in any case, prejudice or sympathy could be permitted to enter. It is a case of

contract. The questions arising in it are questions of law, connected with some questions of fact, and are to be decided irrespective of the condition and circumstances of the parties, according to the law and evidence.

That this is an important case, may readily be conceded;—important in respect to the sum in controversy; and of the grave questions of law arising out of the contract, and the pleadings in the cause. Hence will appear the necessity of approaching those questions, calmly and deliberately; and with a single eye to the truth.

We feel called on to remark, that this is not a case of *guaranty.* For whose debt, default, or miscarriage, did Enoch Spruance and Elihu Jefferson, become responsible, when they entered into this agreement? We gather nothing from the instrument itself, which would raise such a presumption, as that they had undertaken to guaranty any act of performance on the part of the company, for whose use they were purchasing this mail contract. At any rate, they could never have compelled the People's line to accept this contract with Houston, unless they could have shown they were duly acting under their authority.

To understand the character of this contract, and the nature and extent of the liabilities of the parties respectively, we must refer to the contract itself; and give to it, that meaning and construction, which the parties themselves intended it should have. For it is a fundamental principle, that " covenants are to be construed according to the obvious intention of the parties, as collected from the whole context of the instrument; and according to the reasonable sense of the words. If there be any ambiguity, then such construction shall be made, as is most strong against the covenantor; for he might have expressed himself more clearly." (1 *Wheat. Selw.* 447.)

There are three kinds of covenants:—First, " Such as are called mutual and independent, where either party may recover damages from the other for a breach of the covenant, and where it is no excuse for the defendant to allege a breach of the covenant on the part of the plaintiff." (*Campbell* vs. *Jones,* 6 *Term Rep.* 570; 2 *Johns. Rep.* 208, *Green* vs. *Reynolds; Doug.* 689, *Jones* vs. *Barkley.*) 2d. " Such covenants as are conditions, and dependent, in which the performance of one depends on the prior performance of the other, and until the prior condition is performed, the other party is not liable to an action on his covenant." (*Lock* vs. *Wright, Strange* 569; 1 *Wheat. Selw.* 505.) 3d. "Such as are mutual conditions to be performed at the same time, where the plaintiff must show that

he was ready, and offered to perform on his part, and the defendant neglected or refused to perform on his part; and may maintain his action, though it is not certain that either is obliged to do the first act." (*Glazebrook* vs. *Woodrow,* 8 *Term Rep.* 366; 1 *Wheat. Selw.* 510-11.)

In order to ascertain the intention of the parties, it is considered a good general rule that " where the mutual covenants go to the whole consideration on both sides, they are mutual conditions; and also, that where a day certain is appointed for the payment of the money, if such day is to occur after the time when the consideration ought to be performed, for which the money is payable, the performance of the consideration is a condition precedent to the payment of the money." (3 *Law Lib. Platt on Cov.* 37.) Formerly the construction was more rigid on the terms of the contract, and the leaning was, to construe covenants to be independent, but a more liberal and sensible construction now prevails; and it is now established, that the dependence or independence of contracts, is to be collected from the evident sense and meaning of the parties; and however they may stand in the contract, the order of performance must depend upon the requirements of the transaction, (3 *Law Lib. Platt on Cov.* p. 35; 2 *Doug.* 689, *Kingston* vs. *Preston.*)

Construing the agreement in this case, by the common sense principle of the true meaning of the parties, and applying the before recited rules as our guides, let us ascertain what the agreement of the parties is, the question being whether the covenant on the part of George Houston to assign his mail contract with the assent of the postmaster general, to Jacob Raymond or other person whom the stage company might name, is a condition precedent to his right of recovering the money stipulated to be paid for it; whether the transfer and payment were to be cotemporaneous acts, and constituted mutual and concurrent covenants, or are independent covenants for the breach of which either party might sue, without regard to his performance of his own part of the bargain. We are to inquire then, whether in point of time George Houston was bound to transfer his mail contract to the stage company before he was paid for it; or was to be paid for it before he assigned it; or whether the assignment and payment were to be contemporaneous and concurrent acts.

There was an act to be done in reference to the transfer, which depended on the consent of a third party, without whose consent Mr. Houston could not perform his covenant, and the People's line could acquire no legal interest in the mail contract. Whose duty

was it to procure that consent? The procuring the consent of the post office department was a matter which required the joint or mutual action of both parties. Jacob Raymond could not procure the assignment of a contract belonging to George Houston, without Houston's application; nor could Houston get the transfer to Raymond without Raymond's written assent. But who was to move in this business? The neglect or refusal of either would excuse the other; but who was to begin? Whose covenant is it? Undoubtedly George Houston's. He undertook to transfer the contract, with the assent of the post office department to Raymond, or such other person as the company might name; and this assignment was necessary to give the defendants the *interest* of Mr. Houston in the mail contract which he sold defendants, "for which" they agreed to pay the money. George Houston was then bound to move in this business; and procure, with the assent of Raymond or other person whom the company might name, the consent of the postmaster general to this transfer. Jacob Raymond was the party, he himself had named in his covenant, to whom the assignment was to be made for the use, &c., unless he should receive notice from the People's line, that they had appointed some other person than Raymond to receive it. To Raymond, therefore, he should have applied to move in this matter; nor was he at liberty to wait for further notice from the company of the individual to whom he should make the transfer. Suppose the postmaster general had refused his consent to the assignment, would Spruance and Jefferson have been bound to pay the the $1,600? Certainly not. It was not a legal right of Houston to assign that contract, otherwise than by the consent of the postmaster general, who might well refuse, for good public reasons, to sanction any assignment to the People's line. And Mr. Houston cannot have the legal right to recover the price of a thing which he had no right to sell, only on the terms of procuring the consent of another, without obtaining that consent; or, supposing that the plaintiff had the right to sell his contract, subject to the ratification of the postmaster general, and that it would require the positive dissent of that department to annul such a transfer, the defendants secured the company against such contingency, by requiring Houston's covenant to procure the consent of the postmaster general. They agreed to pay $1,600 for Houston's interest in the mail contract, which was an interest sanctioned already by the post office department; Houston sold it to them as fully as he had it, and covenanted for the consent of the postmaster to the sale, without which the defendants could derive no lawful

interest under the mail contract, and without which the defendants could not stand as Houston stood, in the relation of a contractor, or commence service under this contract.   This contingency seems to us to settle the question as to the precedency of the transfer of the mail contract, to the payment of the money, which was the consideration for it.

Another matter apparent on the face of the agreement equally fixes this.   The service under it was to commence on the 1st of January. Now the legal execution of this mail contract by the People's line of stages company, could not commence until after the consent of the postmaster general was obtained.   The agreement stipulates not merely for carrying the mail by the defendants as agents of a contractor, but for executing service under a post office contract *as contractors,* and this service was to commence on the 1st of January. The covenant therefore of George Houston *necessarily* supposes an assignment, which should place the People's line of stages company in the position of contractors, before the time when they were to commence the service of contractors; and this is also apparent from the consideration of the argument, that an assignment after the 1st of January would not be a transfer of the whole interest which Houston sold to the defendants, but only of such part of it as should remain unperformed at the time of the assignment.

As to the *subject matter* of the agreement of the parties, we entertain no doubt that it was George Houston's entire interest, as contractor, on mail route 1801, including the route from Milford to Lewes, as well as that from Wilmington to Georgetown; and these latter words were used merely as words of description of a route, and a service with which the parties were perfectly familiar; because, the People's line of stages company was then in operation on said route, and knew perfectly, the extent of service designated by mail route 1801.   There was no mail route 1801, from Wilmington to Georgetown alone; but the route 1801, the interest in which Houston sold to Spruance and Jefferson, *included* the route from Milford to Lewes.

The declaration contains six counts, in each of which the plaintiff has averred that " the said George Houston had always from the time of making said agreement, well and truly performed all things in said agreement contained on his part to be performed; and was ready and willing on the said first day of January, to assign the said contract, with the consent of the postmaster general, to Jacob Raymond, or any other person said company might name for their use."

By this averment the plaintiff himself has considered this agreement as containing mutual and concurrent covenants, the performance of which he felt himself under the necessity of averring, or at least of a readiness and willingness to perform on the 1st day of Jan. 1840; and we think he has very correctly declared upon this agreement as containing at least concurrent and mutual covenants; and has made the averments necessary under such a view of his case. Having thus declared, he cannot treat them as independent covenants.

The question of fact then is, whether the plaintiff has performed his covenant by procuring the assent of the postmaster general to the assignment, and by making the assignment, or by tendering himself *ready* and willing to make it to Jacob Raymond, or to any other person lawfully authorized to receive the same, for the use of the People's line of stages company. If the plaintiff *has* thus proved the performance of his covenants with the defendant, on or before the 1st of January, 1840, or his readiness, willingness and ability to perform, he is entitled to a verdict for the $1,600, and interest, by way of damages. If, however, he has not shown that he procured the assent of the postmaster general, as he had covenanted to do, and afterwards made, or tendered, or was ready to make the assignment to Jacob Raymond, or to another as aforesaid, the verdict ought to be for the defendant.

There is no *general* issue in covenant, and the plea of "non infregit conventionem" is a bad plea on demurrer, when the declaration states several breaches. "If it can be pleaded in any case, it must be in the single case where the declaration states a single breach of covenant in the affirmative, and concludes with an affirmative allegation; and so the defendant has broken his covenant." The reason assigned in the books is, that this plea is too general, when several breaches are assigned; and that when the breaches aver nonperformance, it is defective—"because two negatives could not make a good issue." (1 *Wheat. Selw.* 529-30.) There is one plea, however, which the defendant has put in on which he relies, and which goes the whole length of this case, in which he pleads "that the said George Houston did not on or before the first day of January, 1840, &c., assign his said mail contract, the interest in which was so sold by him, as is stated in said articles of agreement, &c., to the said Jacob Raymond, according to the tenor of his covenant, &c."

. Verdict for defendant.

*Rogers* and *Wales*, for plaintiff.
*W. T. Read* and *J. M. Clayton*, for defendant.